Clarence W. **FISHER** et al., Plaintiffs-Appellants,

v.

**PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellee.**

No. 12465.

United States Court of Appeals
Seventh Circuit.

Feb. 18, 1959.

9. 9 Cir., 1958, 252 F.2d 550.

Edward P. Burke, St. Louis, Mo., for appellants.

Edward G. Maag, Ralph D. Walker, East St. Louis, Ill., for defendant-appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

Plaintiffs brought an action in equity in an Illinois state court asking that defendant abate an alleged nuisance. Later, claiming the nuisance had been abated, plaintiffs amended their complaint seeking damages. On the basis of diversity of citizenship, the cause was removed to the United States District Court for the Eastern District of Illinois. Thereafter, defendant moved to dismiss the complaint upon the ground that it did not state a claim upon which relief could be granted. The District Court granted the motion and dismissed the complaint and the cause.

For many years, defendant Railroad has operated its Rose Lake Yards within the corporate limits of the village of Fairmont City, Illinois. During the winter 1954–1955, defendant constructed facilities for loading and unloading truck trailers on its right-of-way in the Rose Lake Yards. Thereafter, defendant operated in said yards what has come to be known as a "Piggy-back" service whereby heavily loaded truck trailers were hauled to the yards in tractor-trailer combinations after which the trailers were detached and loaded on to specially designed freight cars for shipment to different points in the country. Other trailers were brought to the yards on similar freight cars and were then unloaded and removed from the yards by tractors.

The Rose Lake Yards are located at the southern end of 38th Street in Fairmont City. In moving the loaded trailers to and from the yards it was necessary to utilize 38th Street and Cookson Road which were the only streets in that vicinity which did not have a municipally-imposed load limit of eight tons. This condition continued until December, 1957, when defendant constructed its own access road.

The premises and dwellings owned by fourteen of the plaintiffs front on either 38th Street or Cookson Road; six of them front on 37th Street and five front on two other nearby streets. These dwellings are located at various distances from the yards, some being as much as a mile distant.

The complaint alleges that prior to the late winter of 1954 or early spring, 1955, Cookson Road and 38th Street were quiet residential streets not used for heavy truck traffic; that these streets were oil-surfaced and designed for use of traffic usually found in residential neighborhoods; that after defendant constructed its facilities as hereinbefore described, the number of tractor-trailer units using the facilities increased until finally three hundred or more units a day passed over the streets in front of or near plaintiffs' homes. The complaint alleged this heavy traffic continued from 6 a.m. until 10 p.m., seven days a week; that the homes of plaintiffs were subject to a great amount of vibration causing damage and discomfort; that the excess amount of heavy tractor-trailer traffic caused noise, dust, fumes and continuous disturbance, and took from plaintiffs the enjoyment and reasonable comforts of life, and "interfered with the reasonable enjoyment, safety and health of the plaintiffs in their homes * * *."

It is worthy of note that the complaint does not allege, nor is any claim now made, that the tractor-trailer traffic on 38th Street and Cookson Road was in any way a violation of the Statutes of Illinois or of the municipal ordinances of Fairmont City. Nor is there any allegation of any negligence on the part of the companies or individuals who drove the tractor-trailers on 38th Street and Cookson Road. Plaintiffs do not seek to recover damages from the actual users of the streets in question.

Although not thus expressly stated in the complaint, it is apparent that the substance of plaintiffs' claim is that defendant railroad created and maintained a private nuisance at its Rose Lake Yards by initiating a service there which resulted in an unreasonable interference with their use and enjoyment of their property, and that this condition was caused by the concentration of heavy truck traffic on 38th Street and Cookson Road because of a municipally-imposed 8-ton limit upon other streets leading to the yards. Plaintiffs argue that defendant could have constructed its own street or road at an earlier date than December, 1957, when such a road was actually built.

■ This being a diversity case, Illinois law is applicable. However, there is no decided case in Illinois or elsewhere that we know of which supports plaintiffs' position that the complaint herein states a claim upon which relief can be granted.

Just one hundred years ago the Supreme Court of Illinois held it was proper for the city of Chicago to grant a railroad company the right to construct and operate railroad tracks in a city street. Moses v. Pittsburgh, Ft. Wayne and Chicago Railroad Company, 21 Ill. 515. With prophetic vision the court there stated:

"It must necessarily happen that streets will be used for various legitimate purposes, which will, to a greater or less extent discommode persons residing or doing business upon them, and just to that extent damage their property, and yet such damage is incident to all city property, and for it a party can claim no remedy. * * * A street is made for the passage of persons and property; and the law cannot define what exclusive means of transportation and passage shall be used. Universal experience shows that this can best be left to the determination of the municipal authorities, who are supposed to be best acquainted with the wants and necessities of the citizens generally. To say that a new mode of passage shall be banished from the streets, no matter how much the general good may require it, simply because streets were not so used in the days of Blackstone, would hardly comport with the advancement and enlightenment of the present age. * * *"

Under Chapter 24, § 23–10, Ill.Rev. Stats.1957, the municipal authorities are given exclusive powers to regulate the streets in their communities. In People ex rel. Mather v. Marshall Field & Co., 266 Ill. 609, at page 625, 107 N.E. 864, at page 870, L.R.A.1915F, 937, the court said: "Under our constitutional provisions as construed by this court, cities, within certain general limitations, have the authority to declare the general policy in regard to the control of streets (citing cases). In the absence of a contrary showing, this court will presume that the municipal authorities, in passing on matters of this kind, have acted for the best interests of the city."

In that case the court also said: "These public rights do not depend upon the methods of travel recognized at the time the streets were opened or such public uses as have been sanctioned by long-continued custom and acquiescence. The use of the streets must be extended to meet the new needs of locomotion, both above and below the surface of the ground. * * *"

It was not the defendant railroad that placed the 8-ton limit on all streets except

38th and Cookson Road and thus concentrated heavy traffic on those two streets. Such action was taken by the municipal authorities of Fairmont City.

In Peoples Gas Light & Coke Company v. City of Chicago, 413 Ill. 457, 109 N.E. 2d 777, 781, in holding the municipality holds the streets in trust for the people of the entire state, the court said: "So far as their use for street purposes is concerned, every citizen of the State has an equal right."

Plaintiff relies upon Gribben v. Interstate Motor Freight System Company, 18 Ill.App.2d 96, 151 N.E.2d 443, 445. In that case plaintiffs sued to enjoin the construction of a motor freight terminal. The complaint alleged that the existence of a motor truck terminal would alter the character of a residential neighborhood; that constant noise and vibration would render the occupancy of plaintiffs' homes unhealthy and untenable; that trucks would release noxious gas fumes, and alleged the operation of a motor freight terminal would amount to a private nuisance. The trial court granted a summary judgment for defendant and the Appellate Court reversed.

We think the decision in the Gribben case is in no way controlling. Plaintiffs there were the owners of residential property contiguous to or in the immediate vicinity of the property there in question. The court stated that the principal question for decision in that case was the validity of an amendment to the zoning ordinance in the town of Cicero. The court held that whether the zoning ordinance was invalid presented a factual question that should not have been decided by summary judgment. No question was decided in that case which involved a legal use of the streets by others than the owner of the premises.

As we agree with the District Court that plaintiffs' amended complaint did not state a claim upon which relief could be granted, the judgment dismissing the claim and the cause is

Affirmed.